FILED

2016 AUG -8 PM 2:46

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTIAN DOSCHER,

      Plaintiff

                                 Case No. _8:16cv2276-T-27AEP_

    v.

JAMES PATRICK HOLDING,

      Defendant

————————————/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Christian Doscher, acting **pro se**, and mindful of the need for a libel Plaintiff to

plead detailed facts, hereby brings this action against Defendant James Patrick Holding

for libel *per se*:

> The court should construe pro se pleadings liberally and hold them to a less stringent standard than
> pleadings drafted by attorneys.
> > Jones v. Citibank, NA, No. 8: 16-cv-1404-T-27TBM (M.D. Fla. June 15, 2016)
> > citing Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)

1.  As will be documented in great detail, *infra* (so as to meet the heightened

pleading standard in *Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)*), between June

2015 and December 2015, Defendant Holding, through an Internet Predator Alert ('IPA')

document which he authored and posted to his own publicly accessible and search-

engine-indexed website, and through vitriolic posts on theologyweb.com ('Tweb') and

other such websites and through email and other internet-based communications to

myriad unprivileged third parties, did *maliciously and with reckless disregard for the*

*truth*, accuse Plaintiff (sometimes using Plaintiff's real name) of the following felonies

and misdemeanors:  Spousal Abuse, Identity Theft, Assault, Harassment and Stalking.

> ... it is not necessary for the individual referred to be named if those who knew and were acquainted with Misko understood from reading the Post that it referred to her.
> Backes v. Misko, No. 05-14-00566-CV (Tex. App. Mar. 13, 2015)
> citing Newspapers, Inc. v. Matthews, 339 S.W.2d 890, 893, 894 (Tex. 1960)

2.   All of Defendant's above-cited accusations are false; Plaintiff has never

committed any of these crimes or acts.  More specifically, Plaintiff did not commit those

acts *as Defendant had defined them* in his various third-party communications.

3.  Florida's definition of libel:

> Libel is defined as "the unprivileged written publication of false statements."
> Perry v. Naples Hma, LLC, Case No. 2:13-cv-36 (Dist. Ct, MD Florida 2014)
> quoting Thompson v. Orange Lake Country Club, Inc., 224 F. Supp. 2d 1368, 1381 (M.D. Fla. 2002)

> "[A]n action for libel will lie for a `false and unprivileged publication by letter, or otherwise, which exposes a person to distrust, hatred, contempt, ridicule or obloquy or which causes such person to be avoided, or which has a tendency to injure such person in [their] office, occupation, business or employment.'"
> Blake v. Giustibelli, 182 So. 3d 881, 884 (Fla. 4th DCA 2016)
> quoting LRX, Inc. v. Horizon Ass'n Joint Venture, 842 So. 2d 881, 885 (Fla. 4th DCA 2003)

## I.   PARTIES

4.   Plaintiff Christian Doscher is and was a private citizen of the State of

Washington during the alleged commission of all torts alleged herein.  Plaintiff is the

"bud" and "skepticbud" which Defendant's below-quoted libels refer to.

5.   Defendant James Patrick Holding (formerly 'Robert Turkel') is and was a

private citizen of Ocoee Florida during the alleged commission of all torts alleged herein.

## II.   JURISDICTION AND VENUE

6.     The parties live in separate states, and the amount in controversy exceeds

$75,000, hence, this Court has diversity jurisdiction under 28 U.S.C. § 1332(a).

7.     The only Defendant in this case, James Holding (formerly Robert Turkel), is a

resident of Ocoee Florida, and he committed at least a substantial portion of the alleged

torts while within this District.  Hence, venue is proper in this Court pursuant to 28

U.S.C. § 1391(b)(1, 2).

## III.   GENERAL SUMMARY

8.     It is well-settled that when internet-based libels are cast in the form of "alerts",

or otherwise include 'specifics', this indicates the language was intended to be taken by

the reader as factual, not opinion:

> ..."Internet posts, where the `tone and content is serious,' where the poster represents himself as
> `unbiased' and `having specialized knowledge,' or where the poster claims his posts are `Research
> Reports' or `bulletins' **or `alerts**,' may indeed be reasonably perceived as containing actionable
> assertions of fact. [And while `generalized' comments on the Internet that `lack any specificity as to the
> time or place of' alleged conduct may be a `further signal to the reader there is no factual basis for the
> accusations,' **specifics, if given, may signal the opposite and render an Internet posting
> actionable**." (Bently Reserve, supra, 218 Cal.App.4th at p. 431; see also Wilbanks v. Wolk, supra, 121
> Cal.App.4th at p. 904, fn. omitted [defendant's position as "crusader and watchdog to the industry"
> demonstrated she "expected readers to rely on her opinions as reflecting the truth"].)
>                     Lifevantage Corporation v. MacFarland, No. A141057 (Cal. Ct. App. July 24, 2015)

9.     As will be documented in great detail, *infra,* Defendant during said June-

December 2015 time period also communicated to multiple unprivileged third parties that

Plaintiff was *dangerously* mentally unstable, and was no different than inmates in a

prison psych ward who are required to take "psych meds".

10.     Those allegations are false:   Plaintiff is neither mentally unstable, nor mentally

unstable *to a degree that would make him dangerous to anyone*, nor has he ever been in

3

prison nor been prescribed any medication or "psych meds" for any mental or psychological condition.

## IV.    NEITHER PARTY IS A PUBLIC FIGURE

11.   Neither party has ever sought or acquired any position of public power or influence which would give him the ability to protect himself apart from the courts within the meaning of *New York Times v. Sullivan, 376 U.S. 254 (1964)*.  The parties are not public figures within the meaning of *New York Times, supra* or its progeny.

## V.    THE STATUTE OF LIMITATIONS DOES NOT BAR THIS ACTION

12.   Florida's statute of limitations for libel is 2 years:

> "...the statute of limitations for "action[s] for libel and slander" is two years under Florida law."
> Tobinick v. Novella, No. 9: 14-CV-80781-ROS./BRAN. (S.D. Fla. Mar. 16, 2015)
> citing Fla. Stat. § 95.11(4)(g)

13.   All of Defendant's internet-based comments, which are referenced anywhere in this Complaint as showing libel, were both sent by Defendant and received by the third-parties on or after June 1, 2015.

14.   Since this case is filed before June 1, 2017, this action is thus brought well within the applicable 2-year statute of limitations.

## VI.   DEFENDANT ASSERTED MULTIPLE TIMES THAT ALL ALLEGATIONS HE EVER MADE ABOUT PLAINTIFF WERE SUPPORTED BY 'FACTS', HENCE, HE HAS FORECLOSED THE POSSIBILITY OF THE "PURE OPINION" DEFENSE

15.   In a theologyweb.com ('Tweb') discussion thread entitled *"The 'Secret Identity' of Skepticbud aka spirit5er aka Debunked aka B&H aka..."* (hereafter, "skepticbud thread"), in a post therein dated July 2015 (post # 131), Defendant admitted that he had all facts necessary to support all claims he made about Plaintiff.  His exact words were:

> Thanks for the hint Bud. Now I'll do you a favor....explain even more reasons you'll fall on your face, flat, with both your silly little lawsuit AND your appeal to Florida law.
> <u>On the lawsuit...we have ALL we need to prove every single claim made.</u>

16.   On or about October 13, 2015, Defendant again stressed in a message to various members of Tweb that *all* he ever wrote about Plaintiff was "completely factual":

> The suit was groundless for a number of reasons. <u>One is that all I wrote about him was completely factual, or at the very least, I believed it all to be factual.</u>

17.   Hence, Defendant is prevented, by his own unstoppable mouth, from litigating the "pure opinion" defense to the libels herein enumerated.


## VII.   DEFENDANT FALSELY ALLEGED IN AN UNPRIVILEGED THIRD-PARTY COMMUNICATION THAT PLAINTIFF WAS GUILTY OF THE CRIME OF DOMESTIC VIOLENCE/SPOUSAL ABUSE

18.   *Publication* – In an email from Defendant to unknown third-party dated October 12, 2015, Defendant asserted Plaintiff (i.e., "Bud") had beaten his (Plaintiff's) wife:

From: J. P. Holding <jphold@att.net
Sent: Monday, October 12, 2015.734 PM
Subject: Re: I just hired an attorney in WA
> ...And of course you can be sure I'll squeeze Bud himself as much as I can....even if I make him
> sell some of his prized possessions to do so. That may seem harsh, but he is a very, very evil
> person, and he needs to stop hurting people. I am sure he has sued many innocent people in his
> home state and frightened them into settling the lawsuits. <u>He also beat his wife, which I find</u>
> <u>especially despicable.</u>

19. **_Falsity_** - That assertion is false.  Plaintiff has never beaten his wife.

20. **_Libel per se_** - It cannot be known just yet whether the specific type of spousal

abuse Defendant intended to accuse Plaintiff of, was misdemeanor or felony, but even if

it was only the misdemeanor type, courts have recognized for more than 45 years that

even a mere *implied* accusation that one "beats his wife", if false, is libelous *per se*:

> Applying the above principles to this case, we are of the opinion that the article before us has but one
> reasonable interpretation<u>: that appellant beat his family—his wife</u> and children—and that these
> beatings resulted in his wife's filing for divorce on the ground of cruelty.  <u>The language of the article is</u>
> <u>thus defamatory since it imputes to appellant "conduct that would render him liable to punishment, or</u>
> <u>make him odious, infamous, or ridiculous." The words used charge an assault, a crime, and to accuse</u>
> <u>one of a crime is libel per se.</u>
>      Johnson v. Johnson Publishing Co., 271 A. 2d 696, 697-98 (DC: Court of Appeals 1970)

21.    Florida law holds that one need only falsely allege that another person has

"done something illegal", no need to describe a felony, to be guilty of libel *per se*:

> A statement that a person has committed a crime <u>or done something illegal</u> is one of the classic slander
> per se categories — that is, the pleader need not allege specific damages to state a cause of action.
>                        Scott v. Busch, et al, 907 So.2d 662, 667 (DC, 5[th] Dist. 2005)

> Notably, "...words falsely imputing a <u>criminal offense</u> to another [i.e. `thief' and a crook,] are
> actionable per se."
>                  Mitchell Co., Inc. v. Campus, 672 F. Supp. 2d 1217, 1245 (Dist. Court, SD Alabama 2009)
>                  Quoting Bobenhausen v. Cassat Ave. Mobile Homes, Inc., 344 So.2d 279, 281 (Fla.App.1977)

22.    Since "thief and crook" can easily be crimes *but without rising to the extreme of*

*felonies*, yet such terms were held actionable per se, then Defendant's false accusation

that Plaintiff committed spousal abuse (i.e., "beat his wife") would be actionable per se

even if he only meant a level of abuse rising no higher than a misdemeanor offense.

Clearly, a "misdemeanor" qualifies as "something illegal", *Mitchell, supra*.

## VIII. DEFENDANT FALSELY ALLEGED IN AN UNPRIVILEGED THIRD-PARTY COMMUNICATION THAT PLAINTIFF COMMITTED THE CRIME OF IDENTITY THEFT

23. *Publication* - In the skepticbud Tweb thread, post # 102, dated July 7, 2015, Defendant accused Plaintiff of having signed up Defendant's email account to receive pornography and other "spam" advertisements (i.e., identity theft or fraud):

> He's also denying he signed me up for all those porn newsletters and stuff. Forget it Bud...one of them came in as having been registered from that Nashville ISP you use...the same one you use to start your fake accounts here. The staff here has it all down..so don't deny it. You outsmarted yourself with that crap. Now I know you read this, since you have no life to speak of, so pay attention...keep this up and your local police will be getting a call. And I'll be having all that evidence available for them by the time I call.

24. *Falsity* - That allegation is false, Plaintiff has never signed up Defendant's email address for anything or to receive anything, period.

25. *Libel per se* – Defendant, by threatening in context to call Plaintiff's local "police", ensures that the act he was accusing Plaintiff of, was a "crime".

26. Identity Theft or Fraud would be actionable per se given that regardless of whether they rise to the level of felony or not, they qualify as "something illegal", *Mitchell, supra.*

## IX.   DEFENDANT FALSELY ALLEGED IN AN UNPRIVILEGED THIRD-PARTY COMMUNICATION THAT PLAINTIFF HAD COMMITTED THE CRIMES OF ASSAULT AND HARASSMENT

27.   *Publication* – In a private Tweb message to "sparko" dated September 9, 2015, Defendant implied in the strongest possible way that seven police reports had asserted that Plaintiff had been accused of, arrested for, or convicted of assault and harassment:

> From : jpholding
> TO : Sparko
> Date: 2015-09-09      19:00
> Title: Bud in Police Records
>> Holy smokes...I just got no less than SEVEN police reports involving Bud in the last 11 years, from the Lacey PD. **He definitely has not been a good boy.** I need to look at them closely, **but there's definitely a harassment one in there, plus something to do with an assault.** I'll let you know when I finish a detailed look. (emphasis added)

28.   Defendant's qualifying phrase in the context ("He definitely has not been a good boy") implicates Florida's libel by implication law:

> "Defamation by implication arises, not from what is stated, but from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts. . . "
> Klayman v. Judicial Watch, Inc., 22 F. Supp. 3d 1240, 1254 (S.D. Fla. 2014)
> citing Jews for Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1106 (Fla: Supreme Court 2008)

29.   Defendant juxtaposed the fact of 7 police reports on assault/harassment which mention Plaintiff, with the alleged fact "he *definitely* has not been a good boy", where "definitely" is used to ensure the context is perceived by the reader as factual.

30.   *Defamatory juxtaposition* - It does not matter whatever other implications might arguably be present from this juxtaposition, it cannot be denied that a reasonable implication from this particular combination of alleged facts is that Defendant was intending to tell "Sparko" that Plaintiff *himself* was the one whom those seven police reports said was suspected of, arrested for or guilty of those crimes.  Where a defamatory

construction is reasonably possible, the Defendant's predictably self serving and
predictably mild construction of his own words has no legal significance; a jury will be
required to tell the Defendant what sense he meant his words to convey:

> In a situation such as this, where the alleged defamation can be understood one of two ways only one
> of which is defamatory to the plaintiff, it is normally a decision for the fact-finder to determine what a
> reasonable person hearing the statement would likely have understood it to mean, based on the
> circumstances and audience involved.
>                                   Scott v. Busch, 907 So. 2d 662, 667 (DC, 5th Dist. 2005)
>                        citing Miami Herald Publishing v. Ane, 423 So.2d 376 (Fla. 3d DCA 1982)

31.  *Defamatory omission* – Defendant did not, within the context of this email, nor
ever to Plaintiff's knowledge, reveal the fact that for all 7 police reports at issue, Plaintiff
was only named in them *solely* because he was reporting the crimes of other people, or
testifying as a witness to other people committing those crimes.

32.  Including such facts surely would have mitigated the misleading impression of
Defendant's carefully chosen words. *Klayman v. Judicial Watch, supra.*

33.  *Falsity* - nothing in those 7 police reports indicates that *Plaintiff* was ever
accused of, suspected of, arrested for, or convicted of assault or harassment.

34.  The only reason Plaintiff is mentioned in those 7 police reports is because he
was either reporting the crime of another person, or was witness to the crime of another
person.

35.  *Libel per se* – On the strength of *Mitchell Co., Inc. v. Campus, supra*, this
particular libel would be actionable per se even if Defendant testified he only meant to
accuse Plaintiff of the *misdemeanor* versions of assault and harassment.

## X.   DEFENDANT ASSERTED IN UNPRIVILEGED

## COMMUNICATIONS TO THIRD PARTIES THAT PLAINTIFF

## WAS A *DANGEROUSLY* MENTALLY UNSTABLE STALKER

36.    Florida Courts have already found that even the *unqualified* accusation

"mentally unstable", if false, is sufficient to require jury trial for libel:

> Statements that Plaintiff is "mentally unstable," ... can certainly be interpreted as having a tendency to
> injure him in his occupation, business, or employment. Plaintiff and Defendants have submitted
> affidavits disputing the care taken in investigating these claims prior to their publication. Further,
> Plaintiff has shown that potential clients and other attorneys were wary of Plaintiff's professional
> services after seeing the posts. This is sufficient to create a triable issue of fact as to whether these
> statements were libelous.
>
> Saadi v. Maroun, Case No. 8:07-cv-1976-T-24-MAP (Dist. Court, MD Florida 2009)

37.    *Publication # 1* – In the Tweb skepticbud thread, in a posting dated June 8,

2015, Defendant accused Plaintiff of being a *dangerously* mentally unstable threat to the

safety of the readers:

> 06-08-2015,  07:13 PM  #2
> jpholding
>   Oooh boy.
>   Won't reveal the details here...not now. But for the sake of everyone's safety....
>   Yeah. He IS mentally unstable, and that's a matter of (highly) public record. Some of us,
> me included, asked that of him as a joke, but it turns out to be true.
>   Details on request only at this time.

38.    Defendant's qualifying words "but for the sake of everybody's safety" implicate

Florida law on libel by implication:

> "Defamation by implication is premised not on direct statements but on false suggestions, impressions
> and implications arising from otherwise truthful statements." (citation and internal quotation marks
> omitted)).
>
> Klayman v. Judicial Watch, Inc., 22 F. Supp. 3d 1240, 1255 (Dist. Ct, SD Florida 2014)
> quoting Jews For Jesus, Inc., 997 So.2d at 1107

39.    *Defamatory implication* – by Defendant calling Plaintiff "mentally unstable"

and signifying that he is revealing this "for the sake of everyone's *safety ...* ", it doesn't

matter if Defendant can conjure up 101 mild innocuous interpretations of those words,

the interpretation that says Defendant was implying Plaintiff is not just mentally unstable,

but unstable to the point of *making him a threat of one degree or other to the safety of*

*Tweb readers/members*, remains a reasonable interpretation.

40.   *Falsity # 1 –* Plaintiff is not and never has been "mentally unstable", nor

mentally unstable to the degree that he would ever represent any degree of threat to the

"safety" of any Tweb reader or member.

41.   *Falsity # 2 –* Defendant says Plaintiff's dangerous level of mental instability is a

matter of highly public record.  That is false, there are no public records indicating that

Plaintiff is mentally unstable *in the sense that Holding clearly meant in the immediate*

*context* (i.e., that Plaintiff is a threat to the 'safety' of other people).

42.   According to *Scott v. Busch, supra*, the fact that that at least one of the possible

reasonable interpretations show libelous intent, means only a jury can decide whether

Defendant's predictable self-serving mild interpretation of his own words is what he

really meant to convey, or if that excuse is nothing but a desperately late fiction conjured

up for no other purpose but to dishonestly deny his genuine culpability.

43.   *Publication # 2 –* Defendant on October 21, 2015 emailed a third party saying

he had plenty of facts to back up his accusation that Plaintiff was mentally unstable and a

stalker:

> Subject: Re: Hmm, okay
> To: pixelator99@hotmail.com
> From: jphold@att.net
> Date: Wed, 21 Oct 2015 10:12:43-0400
> …Looking again at his complaint….I can now see how nearly all of that can be classed as fair
> comment/opinion. The only parts that are even a little questionable being called that, would be
> "mentally unstable" and "stalker"...and I have plenty of facts to back those up. I think we were all
> questioning his mental state as far back as 2006 and calling him a stalker a ways back too.

44.   *Falsity -* Those allegations are false.  Plaintiff neither is nor was mentally

unstable.

45.   Florida Courts have already found that, where false, accusations that another is

a "stalker" sufficiently implicate felonious acts, to force jury trial:

> ... Further, statements that Plaintiff is a "stalker," ... are reasonably interpreted as assertions that Plaintiff has committed felonious acts. Plaintiff and Defendants have submitted affidavits disputing the care taken by Defendants in investigating these claims prior publishing them, and thus, there is a triable issue of fact as to whether these statements are libelous per se.
>
> Saadi v. Maroun, supra.

46.   *Publication # 3* – The last time a Florida court let somebody off the hook for

calling a Plaintiff "unstable", it was because the publisher carefully qualified his words

showing that he was saying other people only viewed said Plaintiff as "seemingly"

unstable:

> He did not state as a factual matter that Plaintiff was unstable, only that others perceived him to be "seemingly unstable" (emphasis added).
>
> Fuoco v. O'neill, No. 8: 09-CV-1262-T-27MAP (M.D. Fla. Feb. 11, 2011)

47.   By stark contrast, Defendant Holding clarified in his IPA that Plaintiff

Doscher's alleged mental instability was a matter of *clinical fact*:

> Addendum, 8/18/2015: "Mentally Unstable"
> Though he denies it, that Doscher is mentally unstable is a matter of <u>clinical fact.</u>

48.   *Falsity* - The allegation is false.  Plaintiff has never been clinically diagnosed or

assessed as being mentally unstable, nor unstable to the degree that Holding meant in

publication # 1, supra, (i.e., danger to the safety of other people).

49.   *Publication # 4* – Defendant further alleged in the IPA that Plaintiff's mental

instability made him 'dangerous':

> Addendum, 8/18/2015: "Dangerous"
> Doscher denies that he is dangerous because of his mental instability. Once again, clinical sources disagree with his claim.

50.   *Falsity* - The allegation is false, Plaintiff was never 'dangerous' to anybody at

Tweb.

51.    In an email to a third party dated September 29, 2015, Defendant asserted that

Plaintiff is *no different than prison inmates who are required to take "psych meds":*

> On 9/29/2015 11:02 AM, Pixelator'99 Pixelator09 wrote:
> Bud is so self-absorbed that he doesn't even know what he is saying any more. Maybe he needs to
> be committed to some psychiatric facility. He is definitely not acting rationally.
> John Sparks
> From: J. P. Holding <jphold@att.net
> Sent: Tuesday, September 29, 2015 8:21 AM
> Subject: Re: Sorry....
> 50 years ago he probably would be in a facility. Both prisons I worked at included a large population
> of inmates on psych meds. He's no different.

52.    *Falsity* - Defendant's allegation that Plaintiff is "no different" than prison

inmates required to take "psych meds" is false. Plaintiff has never been to prison, nor

ever been prescribed "psych meds" or any other medication for any mental or

psychological issues or conditions, and has never been diagnosed with any mental

condition requiring him to take "psych meds".


## XI.    DEFENDANT THROUGHOUT HIS LIBELOUS POSTINGS SOUGHT TO
## DETER THIRD PARTIES FROM INTERACTING WITH PLAINTIFF

53.    Florida law says where false accusations tend to cause the victim to be shunned,

those words are libelous "per se":

> "Libel per se may be defined as the false and unprivileged publication by letter, newspaper, or other
> form of writing, of unfounded statements or charges which expose a person to hatred, distrust,
> contempt, ridicule, or obloquy, or which tend to cause such person to be avoided, or which have a
> tendency to injure such person in his office, occupation, business, or employment,
>        Delacruz v. Peninsula State Bank, 221 So. 2d 772m 775 (Fla: DCA 2nd Dist. 1969)
>        quoting McCormick v. Miami Herald Publishing Company, Fla. App. 1962, 139 So.2d 197

> "When the words published concerning a person tend to degrade him, bring him into ill repute, destroy
> confidence in his integrity, or cause other like injury, such language is actionable per se."
>        Spears v. Albertson's, Inc., 848 So. 2d 1176, 1179 (Fla: Dist. Court of Appeals, 1st Dist. 2003)
>        quoting Axelrod v. Califano, 357 So.2d 1048, 1050 (Fla. 1st DCA 1978)

54.    In his IPA Defendant tells the readers to avoid "Doscher" and ban him from

their websites and blogs.  From the IPA:

> Those contacted by Doscher are hereby warned that disagreeing with him, even politely, will likely
> result in him spamming your website or blog with nuisance posts, cyberstalking, and bullying.
> If he comes to your blog or website, he should be banned immediately.

55.    *Falsity* – Plaintiff has never "spammed" any website, nor engaged in

cyberstalking or bullying.

56.    On at least two other websites, Defendant tells the readers that Plaintiff has

joined their websites under the names "Celsus" or "RagnarLothbrok", that Plaintiff is

guilty of plagiarism and that Plaintiff should be banned from these websites:

> June 7th, 2015     #14
> jpholding
> Default Re: The significance of the Greek verb ōphthē, Paul's "vision", and the earliest beli
>     Greetings to members of this forum,
>     This is J. P. Holding, an Internet-based apologist and member of the Theologyweb forum. I've come
> here to warn you about this character who has styled himself RagnarLothBrok.
>     You ought to know that he is a professional troll who has been repeatedly banned from
> TheologyWeb, especially for behavior like stalking, as well as profanity and blasphemy, and stealing
> the work of others without credit.
>     You'll want to review the following items, and I expect I speak for the owners of Theologyweb in
> suggesting that you would be wise to ban him as soon as possible.
>     My Internet Predator Alert about him:
>     http://www.tektonics.org/skepticbud.htm
>                                        from http://christianchat.com/bible-discussion-forum/113038
>                                        -significance-greek-verb-phthae-pauls-vision-earliestbeliefs.html,

> Posted by jpholding | June 7, 2015 1:23 PM
> Greetings to owner of this blog,
>     This is J. P. Holding, an Internet-based apologist and member of the Theologyweb forum. I've come
> here to warn you about this character who has styled himself Celsus.
>     You ought to know that he is a professional troll who has been repeatedly banned from
> TheologyWeb, especially for behavior like stalking, as well as profanity and blasphemy, and stealing
> the work of others without credit.
>     You'll want to review the following items, and I expect I speak for the owners of Theologyweb in
> suggesting that you would be wise to ban him as soon as possible.
>     My Internet Predator Alert about him:
>     http://www.tektonics.org/skepticbud.htm
>                 from http://whatswrongwiththeworld.net/ 2015/04/the_ apostles _and_the_resurrect_1.html,

14

57. *Falsity* – Plaintiff has never posted anything to any website under the names "Celsus" and/or "Ragnarlothbrok", and has never used those names for any purpose, ever.

58. Furthermore, Plaintiff has never committed plagiarism.

## XII. PLAINTIFF SEEKS ACTUAL DAMAGES

59. Plaintiff re-alleges and incorporates by reference all aforesaid factual allegations as though fully set forth herein.

60. Plaintiff endured emotional distress in the form of personal embarrassment and humiliation upon discovery of these libelous acts, and seeks damages for actual emotional distress.

## XIII. PLAINTIFF SEEKS PRESUMED DAMAGES

61. Plaintiff re-alleges and incorporates by reference all aforesaid factual allegations as though fully set forth herein.

62. On the strength of all arguments in this pleading showing that Defendant's words were libelous "per se", Florida law says this allows an award of presumed damages *even if special or actual damages are not proven*:

> ... general damages are conclusively presumed to result from defamation per se and that "special damages need not be shown to sustain the action."
>> Lawnwood Medical Center Inc. v. Sadow, 43 So. 3d 710, 727 (Fla: DCA, 4th Dist. 2010)
>> quoting Commander v. Pedersen, 116 Fla. 148, 156 So. 337, 341 (1934)

63. Plaintiff thus seeks presumed damages.

## XIV.   PLAINTIFF SEEKS PUNITIVE DAMAGES

64.   Plaintiff re-alleges and incorporates by reference all aforesaid factual allegations as though fully set forth herein.

65.   Florida law is clear that defamation or libel "per se" is *defined* as intentionally false statements meant to deceive and harm, and therefore allows punitive damages to be awarded in absence of actual damages:

> Both fraud in the inducement and defamation per se depend on intentionally false statements meant to deceive and harm.
> ... But when the claim is defamation per se, liability itself creates a conclusive legal presumption of loss or damage and is alone sufficient for the jury to consider punitive damages.
> ... defamation is actionable per se, punitive damages may be awarded even though the amount of actual damages is neither found nor shown ...
>
> Lawnwood, 43 So. 3d at 728, 29
> citing See Lundquist v. Alewine, 397 So.2d 1148, 1150 (Fla. 5th DCA 1981)

## XV.   PRAYER FOR RELIEF

66.   WHEREFORE Plaintiff prays for judgment against Defendant as follows:

Judgment on behalf of Plaintiff consisting of

- compensatory damages in the amount of $50,000 for emotional distress;

- $50,000 in presumed damages;

- $25,000 in punitive damages (total damages: $125,000),

- plus reasonable attorney fees/costs, and

- such other and further relief as the Court may deem just and equitable.

## XVI.    DEMAND FOR JURY TRIAL

67.    Plaintiff hereby demands a trial by 12-person jury on all issues so triable against

Defendant.


==================================


68.    I, Christian Doscher, Plaintiff in the above-entitled case, certify under penalty of

perjury under the laws the United States that all facts alleged in this Complaint are true

and accurate to the best of my knowledge and belief.

Dated this 3rd day of August, 2016

Christian Doscher
6435 Doe St. SE
Tumwater, WA.  98501
360-339-3257